**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3268-23

JOSEPH COSTIGAN,

    Plaintiff-Appellant,

v.

GURPRIT BAINS and
SNEH BAINS,

    Defendants-Respondents.

_____

Submitted September 25, 2025 – Decided October 29, 2025

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1968-22.

Brandon J. Broderick, LLC, attorneys for appellant (Christopher A. Bradley, on the brief).

Colquhoun & Colquhoun, PA, attorneys for respondents (Kevin F. Colquhoun and Moira E. Colquhoun, on the brief).

PER CURIAM

Plaintiff Joseph Costigan appeals from the trial court's April 25, 2024 order granting defendants Gurprit Bains[1] and Sneh Bains' motion for summary judgment, dismissing his complaint with prejudice. Plaintiff also appeals from the June 12, 2024 trial court order denying his motion for reconsideration. We affirm.

## I.

This matter arises from a February 18, 2021, slip and fall incident. Plaintiff claims he was walking on a sidewalk toward a diner in Bayonne when he slipped and fell on a patch of ice in front of defendants' residence and struck his head. He testified at his deposition he remembered the weather that day was cold, with wind blowing the snow, but did not recall if snow was falling at the time. He recounted he did not have any difficulty seeing where he was going. Plaintiff stated he did not look down at the sidewalk to determine if any potential hazards were present and only saw the ice after he slipped.

Plaintiff testified he "ha[d] no idea" where the ice came from or how long the condition existed. He stated in his interrogatory responses, he "believe[d] the drainage system on [d]efendants' property that runs down the driveway from

---

[1]  Because the parties share the same last name, we refer to them by their first name. We intend no disrespect.

. . . along the side of [defendants'] house . . . across the sidewalk . . . [was] faulty." He testified that sometime after the accident, he took a picture of water coming out of the downspout of the drainage system. However, these photographs were not produced in discovery.

Sneh testified she was home with her husband Gurprit on the day of the accident because they had to cancel their plans due to the weather. She indicated they had work performed on their property in or around 2018, which included a new sump pump to prevent flooding in their basement and a new downspout drainage system, with additional PVC pipes placed inside and around the home. On the afternoon of plaintiff's fall, she stated her neighbor was at her property clearing snow and ice, and a family friend salted her property later that day.

Plaintiff retained Mark Marpet, Ph.D., P.E., as an engineering expert. Dr. Marpet authored a two-page report, relying on a website for information about the weather on the day of the fall. He described the drainage system on the right side of defendants' home as having a "[four]-inch PVC drain pipe that was fed by rain gutters and a basement sump." Dr. Marpet opined, "[t]he drain pipe created a hazard by leading [the] drain water from the gutters and basement sump onto the driveway and sidewalk, where it c[ould] freeze and create a slip hazard." He opined the elements did not cause the hazard because it had been

3

two days since any precipitation fell. Instead, Dr. Marpet determined "the location and configuration of this . . . drainage system . . . created [the] hazard," which could be ameliorated by relocating the pipe to drain elsewhere.

Defendants retained Stephen Pellettiere, a certified meteorologist from I*ON Weather, to provide an expert opinion regarding the weather conditions on February 18, 2021. Relying on certified weather reports from the National Oceanic and Atmospheric Administration (NOAA), Pellettiere opined there had been a "winter storm and snow/ice event" on the day of the incident, with approximately a half inch of snow on the ground when plaintiff slipped and fell. He disagreed with Dr. Marpet's report that it was not snowing at that time, noting Dr. Marpet "use[d] erroneous 'weather underground data'" that contradicted the certified NOAA observations. Pellettiere opined "it [wa]s highly unlikely that preexisting ice and snow was at the place and time of incident" because "rainfall of less than an inch ended [forty] hours before . . . plaintiff's alleged incident and temperatures were well above freezing and winds were strong for [twelve] hours after rain ended on February 16, 2021."

Defendants further retained an engineering expert, David Caruso, P.E., who provided a report based on relevant codes and standards, and his review of the NOAA weather data. He concluded the sidewalk was properly maintained,

safe, and did not violate any applicable codes, standards, or ordinances. He also opined the topography of the driveway and sidewalk would not cause puddles to form along their surfaces because the property sloped downwards toward the street. Caruso, therefore, concluded "any water flowing from the residence toward [the s]treet, whether discharged from the PVC downspouts or as a result of precipitation, would not form a puddle along the sidewalk surface."

Caruso further disagreed with Dr. Marpet's report, finding his opinions "speculative and without basis" because Dr. Marpet "provided no engineering analysis to substantiate his opinion that water that discharged from the PVC downspouts created an ice condition along the subject sidewalk." He also stated Dr. Marpet did not cite any applicable code, standard, or ordinance requiring the PVC downspouts to discharge water into a drywell or the street, as the City of Bayonne had no such code.

Defendants moved to strike Dr. Marpet's report as a net opinion and for summary judgment. They contended Dr. Marpet's opinion that the drainage system created a hazard lacked any measurements or "demonstration of any slopes or angles or anything about water capacity" and failed to provide any discussion about the sidewalk, which Dr. Marpet claimed had ice on it. They also asserted Dr. Marpet used erroneous data indicating there was no

5

precipitation on the day of the fall "when, in fact, there[ was] an ongoing storm." They claimed Dr. Marpet's reliance on uncertified information was "insufficient to vault the governmental records" referenced in Pellettiere's report, which indicated an active snow and ice storm shortly before plaintiff's fall. Defendants further argued Dr. Marpet's opinion failed to satisfy any of the requirements for an expert report because it contained "nothing . . . but his pure conclusion[s]."

On April 25, 2024, the trial court rendered an oral decision and entered an accompanying order granting defendants' motion to strike Dr. Marpet's report as a net opinion and for summary judgment. The court found Dr. Marpet's report constituted an inadmissible net opinion because it failed to explain "the pertinent scientific principles" and how he applied them to formulate the basis for his opinion. It noted Dr. Marpet did not analyze the rates of evaporation for rainwater under the conditions of freezing temperatures, provide any measurements of the slope of defendants' property, calculate the volume of water that could have exited the drain, or offer scientific support from a qualified meteorologist. The court found the report also "fail[ed] to reference any generally accepted objective standards of practice." Thus, the court determined

Dr. Marpet did not provide the "why and wherefore of his opinion" but rather offered only "a mere conclusion."[2]

With respect to the summary judgment motion, the court found plaintiff failed to offer any competent evidence to raise a genuine issue of material fact. Because it found Dr. Marpet's report was an inadmissible net opinion, plaintiff needed to present competent evidence to show defendants created a hazardous condition different from that created by the storm. It rejected plaintiff's contention the drainage system worsened the conditions of the sidewalk beyond the natural hazards created by the storm. The court was unconvinced by plaintiff's argument the drainage system on defendants' property made the sidewalk condition worse because it allowed water to pool in certain areas which led to frozen patches. It determined, absent admissible expert testimony, "all [of] plaintiff's allegations [we]re speculative" and lacked evidentiary support. Accordingly, the court found there was no genuine issue of material fact that could defeat defendants' summary judgment motion.

---

[2] Plaintiff's case information statement lists as an issue to be raised on appeal whether the court erred in striking plaintiff's expert report. However, plaintiff did not brief this issue and therefore it is waived. See Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

A-3268-23

Thereafter, plaintiff moved for reconsideration, arguing the court made an improper factual determination that an active storm was underway at the time of plaintiff's fall, and he did not need an expert to survive summary judgment. The court clarified it did not weigh the credibility of the competing experts in deciding the prior motion, but rather found Dr. Marpet's report was an inadmissible net opinion, and plaintiff's testimony failed to create a genuine issue of material fact. The court noted, "[w]hether there was an active storm at the time of [p]laintiff's fall was not a material or dispositive factor" in its decision. It assumed the sidewalk was icy when plaintiff fell. Regardless, the court noted plaintiff could not provide specific evidence of causation with respect to defendants' drainage system causing his fall.

The court also rejected plaintiff's argument he could proceed without an expert. It noted plaintiff's argument defendants created the hazard was "completely unsupported by any competent evidentiary material." Plaintiff "merely speculated" the drainage system somehow caused the sidewalk conditions. The court stated, "[p]laintiff repeatedly argues it is possible there was a pooling of water on the sidewalk," but "a mere possibility of something is insufficient to overcome" a summary judgment motion, and the case cannot proceed to trial without expert testimony because the jury would be left to

A-3268-23

speculate. Thus, the court determined plaintiff could not overcome the residential homeowner sidewalk immunity without presenting any evidence to support a logical inference of negligence.

II.

Plaintiff argues the court erred by deciding the issue of whether there was an active storm at the time of his fall by "siding with . . . defendants and their expert" and ignoring plaintiff's testimony. He asserts he fell on a frozen puddle, at a location where defendants' drainage system routed and pooled water, when it was not actively storming. Plaintiff contends his testimony "seems clear that no active precipitation was occurring, and certainly not any rain[,]" because he testified that "he remember[ed] no active precipitation . . . [or] wetness on the ground where he fell." He asserts there is sufficient evidence in the record for a jury to conclude he fell due to defendants' drainage system, which allowed water to migrate onto the sidewalk.

Relatedly, plaintiff avers the trial court erred in ruling his case could not proceed without an expert. He asserts a jury does not need an expert to tell it a drainage system causing water to collect on the sidewalk could be a hazard when the weather is cold.

9

"Our review of a summary judgment ruling is de novo. We apply the same standard as the trial court." Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citation omitted). "That is, summary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

A trial court's decision to grant or deny a motion for reconsideration is reviewed for abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A trial court should grant reconsideration when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). A "plaintiff bears the burden of establishing those elements 'by some competent proof.'" Ibid. (quoting Davis v.

Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)). Courts will "not presume[] that every injurious mishap that one encounters is necessarily attributable to the negligence of another." Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953).

"[A]t common law, property owners had no duty to clear the snow and ice from public sidewalks abutting their land." Luchejko v. City of Hoboken, 207 N.J. 191, 201 (2011) (citing Davis v. Pecorino, 69 N.J. 1, 4 (1975)). "That rule . . . survives today for residential property owners . . . ." Ibid. Thus, unlike commercial property owners, "[r]esidential property owners are immune from sidewalk liability." Wasserman v. W.R. Grace & Co., 281 N.J. Super. 34, 38 (App. Div. 1995).

Indeed, our State adheres to this no-duty rule because "residential property owners stand on different footing than commercial owners who have the ability to spread the cost of the risk through the current activities of the owner." Luchejko, 207 N.J. at 206. Our Supreme Court has articulated, "we may have grappled with what was or was not commercial property, but we have not deviated in our holdings or in our discussions of the law from the basic principle that residential property owners are not liable for sidewalk injuries." Id. at 204. The Court recognized the "fundamental choice not to impose sidewalk liability

on homeowners," and declined to "break with a line of decisions that has promoted settled expectations on the part of residential property owners." Id. at 208.

Nevertheless, residential property owners may be liable if their actions create an artificial, dangerous condition on an abutting sidewalk, thereby negligently introducing a new element of danger other than one created by natural forces. See id. at 201; Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 152 (1981). In other words, homeowners have no duty to maintain the sidewalks abutting their property so long as they have not affirmatively created a hazardous condition. See Deberjeois v. Schneider, 254 N.J. Super. 694, 696, 700-01 (Law Div. 1991) (denying a motion for summary judgment where the plaintiff fell on a raised slab that was defective due to a tree planted by the owners of the abutting residential property); see also Lodato v. Evesham Twp., 388 N.J. Super. 501, 507 (App. Div. 2006) (holding residential landowners remain protected by common-law public sidewalk immunity). Accordingly, "[r]esidential homeowners can safely rely on the fact that they will not be liable unless they create or exacerbate a dangerous sidewalk condition." Luchejko, 207 N.J. at 210.

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Brickman Landscaping, 219 N.J. at 406 (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). "[I]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent [person] in the position of the defendant would have taken." Id. at 406-07 (second and third alterations in original). "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid. (alterations in original) (citations omitted) (first quoting Sanzari, 34 N.J. at 134-35; and then quoting Giantonnio, 291 N.J. Super. at 42); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

"The necessity of expert testimony is determined by the sound exercise of discretion by the trial judge." Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019). "[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Brickman Landscaping, 219 N.J. at 407 (second alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (holding expert testimony was not needed when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence" (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999))).

In cases where "the factfinder would not be expected to have sufficient knowledge or experience[,]" expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing Kelly v. Berlin, 300 N.J.

Super. 256, 268 (App. Div. 1997)).  This is especially true when the alleged negligent act or omission involves technical or specialized matters.  See Brickman Landscaping, 219 N.J. at 407.

Here, the parties do not dispute defendants are owners of a residential property.  As such, to overcome defendants' immunity from sidewalk liability, plaintiff must present competent evidence showing defendants created or exacerbated a hazardous condition on the sidewalk.[3]  Plaintiff asserts defendants' drainage system routed precipitation from a prior storm causing it to pool on the sidewalk, which then froze to form a sheet of ice.  However, without expert testimony to establish measurements of the slope of the property and whether the water from defendants' drainage system caused water to pool on the sidewalk in the location where plaintiff alleges he slipped on ice, we conclude the trial court did not err in determining plaintiff failed to present any competent evidence in support of his claim that the drainage system caused this accident.  In other words, with respect to the court's granting defendants' summary

_____

[3]  The court noted in ruling on the reconsideration motion, "[w]hether there was an active storm at the time of [p]laintiff's fall was not a material or dispositive factor" in its decision.  We assume, for the purpose of deciding this appeal, there was not an active storm at the time of plaintiff's fall.

A-3268-23

judgment motion, plaintiff provided insufficient evidence the drainage system caused water to drain and pool on the sidewalk.

Plaintiff did not do any testing or measurements of the property and there is no indication he has any engineering expertise to support his "belief" expressed in his interrogatory responses that the drainage system was "faulty." It is difficult to understand how plaintiff, without the aid of any expert, could independently assert essentially the same opinion as Dr. Marpet, which was rejected by the court as a net opinion. There is no competent evidence the ice on which plaintiff slipped was caused by defendants' actions so as to implicate the exceptions to sidewalk immunity. Plaintiff failed to show defendants' negligence introduced a new element of a danger or hazard. Thus, the trial court did not err in granting summary judgment or denying plaintiff's motion for reconsideration.

We likewise conclude the court did not misapply its discretion in concluding the common knowledge exception was not applicable and that plaintiff was required to provide expert testimony to survive summary judgment. The topography of defendants' property, the relative slope and manner in which water drained off the property, and whether the drainage system led to water pooling on the sidewalk, under the facts presented here, required an expert's

16

specialized and technical knowledge to establish defendants' negligence was a proximate cause of plaintiff's slip and fall injury. A jury would not be competent to supply the requisite standard by which to measure defendants' conduct and would be left to speculate. Accordingly, the court did not err in finding defendants' negligence could not be established without the aid of an expert.

Therefore, we are satisfied the court did not err in granting summary judgment and did not misapply its discretion in denying plaintiff's motion for reconsideration. We further determine the court did not misuse its discretion in finding plaintiff "cannot proceed to trial without an expert."

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17

A-3268-23